TURNER v LANSING TOWNSHIP

Docket No. 49780. Submitted May 12, 1981, at Lansing.—Decided
July 27, 1981. Leave to appeal applied for.

Lester N. Turner petitioned the Michigan Tax Tribunal for relief
from the alleged excessive tax assessment of certain partner-
ship property by Lansing Township. The township moved to
dismiss the petition on the ground that the petitioner had not
exhausted his administrative remedies. Petitioner thereupon
moved to amend his petition to include allegations of fraud,
misfeasance, and malfeasance and to protest a subsequent
assessment. A hearing officer denied petitioner's motion and
granted that of respondent. Petitioner then appealed to the
entire Tax Tribunal, which affirmed the findings of fact and
conclusions of law of the hearing officer. Petitioner appeals.
*Held:*

1. Petitioner had sufficient notice of the assessment, one of
his partners having received actual notice.

2. Petitioner never protested the assessments before the local
board of review. The record does not reveal that such protest
would have been futile or that the board, if given a chance to
review the matter, would have failed in its duty.

3. The Tax Tribunal did not abuse its discretion in affirming
the hearing officer's decision denying petitioner's motion to
amend his pleadings. Petitioner's delay in alleging constructive
fraud was undue.

Affirmed.

1. TAXATION — TAX TRIBUNAL — JURISDICTION — STATUTES.
The Michigan Tax Tribunal does not acquire jurisdiction to hear
a tax assessment dispute unless a petitioner previously has

REFERENCES FOR POINTS IN HEADNOTES
[1] 72 Am Jur 2d, State and Local Taxation § 787.
[2] 60 Am Jur 2d, Partnership § 135.
[3] 2 Am Jur 2d, Administrative Law § 553 *et seq.*
[4] 72 Am Jur 2d, State and Local Taxation § 778.
[5] 72 Am Jur 2d, State and Local Taxation § 1115.
[6] 4 Am Jur 2d, Appeal and Error § 99.
    72 Am Jur 2d, State and Local Taxation § 1143.

appeared before a local board of review (MCL 205.735[1]; MSA 7.650[35][1]).

2. Partnership — Taxation — Notice — Statutes.

A partnership is held to know conclusively any material fact known to any of its partners and to have notice of everything of which any partner has notice, and thus notice to one partner by a local board of review of a change in the tax assessment of partnership property is consistent with the statutory requirement of notice to the owner of such property (MCL 211.24c, 211.29[7]; MSA 7.24[3], 7.29[7]).

3. Administrative Law — Intermediate Decisions — Appeal — Statutes.

A party aggrieved by a preliminary, procedural, or intermediate agency action or ruling may seek leave to have such action or ruling reviewed by a court where a review of the agency's final decision or order by the agency would not provide an adequate remedy (MCL 24.301; MSA 3.560[201]).

4. Taxation — Overassessment — Fraud.

A tax assessment is fraudulent where it is at variance with undisputed facts, results from the use of a method of valuation which does not determine true cash value, is an intentional overassessment, is so unreasonable that the assessor must have known that it was wrong, or was made in reckless disregard of duty.

5. Taxation — Tax Tribunal — Equitable Relief.

The Michigan Tax Tribunal is vested with equitable powers and may afford injunctive relief to a taxpayer aggrieved by a fraudulent tax assessment.

6. Taxation — Tax Tribunal — Pleadings — Appeal — Statutes.

A party before the Michigan Tax Tribunal may amend or supplement his pleadings only by leave of the tribunal, and, although such amendment liberally should be allowed, the Court of Appeals will not reverse a denial of a motion to amend pleadings absent a clear abuse of discretion (MCL 205.735[4]; MSA 7.650[35][4]).

*Lester N. Turner, P.C.* (by *Lester N. Turner* and *Steven M. Basha*), for petitioner.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J.*

*Berardo* and *Michael A. Eschelbach),* for respondent.

Before: R. M. MAHER, P.J., and ALLEN and CYNAR, JJ.

ALLEN, J. On June 7, 1978, Lester N. Turner filed a petition with the Michigan Tax Tribunal alleging excessive assessment of certain partnership property in 1975, 1976, and 1977, and requesting relief from the tribunal. No allegation was made that petitioner or any of the partnership owners had protested to the local board of review in any of the years on which appeal was taken. In October, 1979, respondent township filed a motion to dismiss the petition and, on November 9, 1979, petitioner moved to file an amended petition adding allegations of fraud, misfeasance, and malfeasance and adding a protest of the assessment for 1978.

Following briefs and argument on the motions before a hearing officer, Julianna B. Wilson, the motion to amend the original petition was denied, and the motion to dismiss was granted on grounds that under § 35 of the Tax Tribunal Act, MCL 205.735(1); MSA 7.650(35)(1), an assessment must be presented to the board of review before the Tax Tribunal may acquire jurisdiction. On December 6, a proposed judgment was entered by the hearing officer denying the motion to amend and granting the motion to dismiss the petition. Petitioner then filed exceptions and appealed to the entire Tax Tribunal which, on January 30, 1980, entered an opinion and judgment affirming the findings of fact and conclusions of law of the hearing officer. From that judgment petitioner appeals of right.

The property in question was a bar-restaurant and a party store known as the Brass Monkey Bar

and Party Store located in respondent township near the Red Cedar River. During the tax years for which the assessment is disputed, the property was owned by a partnership, of which petitioner was one of three partners. In 1975, the property was assessed at $23,400. On April 19, 1975, the Red Cedar River flooded, severely damaging the partnership property. The premises were not repaired or rebuilt, and the business has not operated since that time. In 1976, the assessment was raised to $43,500, and notice of the change in assessment was sent by mail to the address shown on the tax roll, *viz.*, "Turner, Dickerson and Taylor, 3201 S. Cambridge, Lansing, Michigan 48910". No one representing the partnership appeared before the board of review to protest the 1976 assessment. In 1977, the property was again assessed at $43,500, and again the assessment was not protested. Nor was any protest made to the board of review of the 1975 assessment of $23,500 despite the fact that according to petitioner the salvage value of property following the 1975 flood was only $5,000.

Petitioner concedes that § 35 of the Tax Tribunal Act and a consistent line of current decisions,[1] require protest before the board of review before the tribunal may acquire jurisdiction. However, petitioner argues that three judicially created exceptions have been made to the rule allowing review by the tribunal: (1) where the party assessed has no notice of the assessment; (2) where the requirements of board of review appearance

---

[1] The Court of Appeals has consistently held that a petitioner must appear before the local board of review as a condition precedent to maintaining an action with the Tax Tribunal contesting assessments. *Consumers Power Co v Big Prairie Twp*, 81 Mich App 120, 158; 265 NW2d 182 (1978), *Imerman Screw Products Co v City of Hamtramck*, 67 Mich App 727, 730-731; 242 NW2d 505 (1976), *Henal Realty Co v Brownstown Twp*, 90 Mich App 374, 377; 282 NW2d 325 (1979).

would be an exercise in futility; or (3) where local officials have committed constructive fraud. According to petitioner all three exceptions exist in the instant case. We examine petitioner's three claims of exception *seriatim.*

## I. *Notice.*

Petitioner does not deny that notice of the 1976 increase was sent to one member of the partnership but claims that each member of the partnership must receive such notice. In *Howland v Davis,* 40 Mich 545 (1879), the Supreme Court held that notice to one partner was notice to all partners. Previously, the Supreme Court had held that a partnership is held to know conclusively any material fact known to any of its partners and to have notice of everything of which any partner had notice. *Hubbardston Lumber Co v Bates,* 31 Mich 158 (1875). More recently, this Court, citing *Moran v Palmer,* 13 Mich 367 (1865), opined that each partner is a general partner of the others and what is known to one is supposedly known to all. *Robbins v Eotoff,* 39 Mich App 589, 591; 197 NW2d 912 (1972). See also *Osborn v Osborn,* 36 Mich 48 (1877), and 60 Am Jur 2d, Partnership, § 135, p 62.

The statutorily prescribed notice requirements upon a change of assessment are:

"When the board of review makes a change in the assessment of property or adds property to the assessment roll, *the person* chargeable with the assessment shall be promptly notified in such a manner as will assure *the person* opportunity to attend the second meeting of the board of review provided in section 30." (Emphasis added.) MCL 211.29(7); MSA 7.29(7).

"The supervisor or assessor shall give to each owner or person or persons listed on the tax roll of the property a notice by first class mail of an increase in

the assessment for the year. The notice shall specify each parcel of property, the assessed valuation for the year and the previous year, the net change in assessment, and the time and place of the meeting of the board of review. *The notice shall be addressed to the owner* according to the records of the supervisor or assessor and mailed not less than 10 days before the meeting of the board of review. The failure of the property owner to receive notice shall not invalidate an assessment roll or an assessment on property." (Emphasis added.) MCL 211.24c; MSA 7.24(3).

Petitioner's interpretation of the statutory notice requirements, that notice must be given to each partner rather than to the partnership itself, is unreasonable. Under petitioner's interpretation, all shareholders of a corporation whose property assessment is increased would have to be given notice of the increase. Since petitioner testified at the hearing before the Tax Tribunal that one of the partners, Mr. Taylor, lived at 3201 S. Cambridge, and since the unrebutted affidavit of the township assessor stated that notice was sent to the partnership at 3201 S. Cambridge, we find that proper notice was given.

## II. *Futility.*

A second exception to the doctrine of the exhaustion of administrative remedies is found in the rule that the law will not require a citizen to undertake a vain and useless act. Where it is clear that appeal to an administrative body is an exercise in futility and nothing more than a formal step on the way to the courthouse, resort to the administrative body is not required. *Trojan v Taylor Twp,* 352 Mich 636, 638-639; 91 NW2d 9 (1958). The purpose of the doctrine of exhaustion of administrative remedies and the "futility" exception

thereto is found in *International Business Machines Corp v Dep't of Treasury,* 75 Mich App 604, 610; 255 NW2d 702 (1977).

"Exhaustion of administrative remedies serves several policies: (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary. See *Judges of the 74th Judicial Dist v Bay County,* 385 Mich 710, 727-728; 190 NW2d 219, 226 (1971).

"Exhaustion of administrative remedies is not an inflexible condition precedent to judicial consideration, however, and will not be required if review of the agency's final decision would not provide an adequate remedy, MCLA 24.301; MSA 3.560(201), *i.e.,* if it would run counter to the policies which underlie the doctrine."

In the instant case, petitioner never protested the assessments or presented his case before the board of review even though more than three years had elapsed since the flood in April, 1975.[2] The board of review was never given the opportunity to hear petitioner's objections and to take corrective action. The fact that the board of review never had the opportunity to review the alleged overassessment was not the fault of the board of review. Just why the partnership waited so long to protest is not explained. Obviously the partnership knew of the flood and knew that the 1975 assess-

---

[2] Petitioner's original petition, which pertained to the tax years 1975, 1976, and 1977, was not filed until June 7, 1978. The 1978 assessment was not disputed until plaintiff moved to file his amended petition on November 9, 1979.

ment of $23,400 was substantially increased in 1976 and maintained at the higher level in 1977. Petitioner argues that since the damage caused by the flood was known to the board of review when it increased the assessment, petitioner could have offered nothing which would have changed the board's mind. We disagree. Certainly the board of review would have no reason to know that even the 1975 assessment was considered by petitioner to be excessive. Many properties damaged by flooding are covered by insurance and, even if not insured, are repaired or restored to former value. Had the facts that the partnership did not intend to repair the damage or continue the business been presented to the board of review, it well may have adjusted the assessment. In *Hutson v Royal Oak,* 28 Mich App 393, 395; 184 NW2d 558 (1970), this Court said:

"The basis of exhaustion of administrative remedies is the presumption that the administrative agency, if given a chance to pass upon the matter, will decide correctly and will not fail in the performance of its duty."

In the absence of facts to the contrary, we cannot assume that in the case before us the board of review, if given a chance to pass upon the matter, would have failed in its duty.

III. *Motion to amend—constructive fraud.*

The third ground upon which petitioner relies for exclusion from the doctrine of exhaustion of administrative remedies is the doctrine of constructive fraud as set forth and described in *Helin v Grosse Pointe Twp,* 329 Mich 396, 406-407; 45 NW2d 338 (1951):

" 'A valuation is necessarily fraudulent where it is so unreasonable that the assessor must have known that it was wrong. If the valuation is purposely made too high through prejudice or a reckless disregard of duty in opposition to what must necessarily be the judgment of all competent persons, or through the adoption of a rule which is designed to operate unequally upon a class and to violate the constitutional rule of uniformity, the case is a plain one for the equitable remedy by injunction.' 4 Cooley on Taxation (4th ed), § 1645.

"Intentional overassessment is fraud. *Sloman-Polk Co v City of Detroit,* 261 Mich 689 [247 NW 95] 87 ALR 1294 [1933]. In the eyes of the law an assessment at variance with undisputed facts is a fraud upon the rights of the taxpayer. *S S Kresge Co v City of Detroit,* 276 Mich 565, 571 [268 NW 740] 107 ALR 1258 [1936].

"The use of a method of valuation which does not determine true cash values is fraud in law. *Newport Mining Co v City of Ironwood,* 185 Mich 668 [152 NW 1088 (1915)]."

Petitioner seeks in Count III of his amended bill of complaint to set forth facts bringing him under the protective umbrella of constructive fraud. In Count III petitioner avers that after the flood the respondent township knew that there was substantial damage to the property, knew that the premises no longer were occupied and would not permit rehabilitation without requiring substantial structural changes, and knew that the value of the property had diminished substantially but nevertheless proceeded to increase the assessment by some 86%, used a method of valuation not reflecting the decreased value, and that the assessment "was so unreasonable that the respondent should have or must have known that it was wrong".

Since constructive fraud is an equitable doctrine, calling for the use of a court's equitable powers, *Spoon-Shackett Co, Inc v County of Oakland,* 356 Mich 151, 160; 97 NW2d 25 (1959), we must first

decide whether the Tax Tribunal possesses general equitable powers. On that question this Court has come to disparate conclusions. Holding that the Tax Tribunal lacks equitable powers is *Romulus City Treasurer v Wayne County Drain Comm'r,* 86 Mich App 663; 273 NW2d 514 (1978). Holding that the Tax Tribunal is vested with equitable powers is *Edros Corp v Port Huron,* 78 Mich App 273; 259 NW2d 456 (1977), and *Eyde v Lansing Twp,* 105 Mich App 370; 306 NW2d 797 (1981). This panel finds the better reasoning to be found in the *Edros-Eyde* opinions[3] and consequently concludes that in the case before us the doctrine of constructive fraud could be employed if timely raised or not otherwise inapplicable.

However, the Michigan Tax Tribunal hearing officer denied petitioner's motion to amend his original petition. MCL 205.735(4); MSA 7.650(35)(4) provides that a "petition * * * may be amended at any time by leave of the tribunal and in compliance with its rules". Tax Tribunal Rule 225(2); R 205.1225(2) states: "A party may amend or supplement his pleading only by leave of the tribunal * * *." The grant or denial of a motion to amend is discretionary. *Central Advertising Co v City of Novi,* 91 Mich App 303, 317; 283 NW2d 730 (1979), *Matson v Soronen,* 57 Mich App 190, 193; 226 NW2d 52 (1974). Although amendment should be allowed liberally, this Court will not overturn a denial of a motion to amend absent a clear abuse of discretion. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649; 213 NW2d 134 (1973), *Cobb v Mid-Continent Telephone Service Corp,* 90 Mich App 349,

---

[3] We also note that the decisional value of *Romulus* is weakened by reason of the Supreme Court's decision to grant leave to appeal in that case with instructions to the parties to brief the Court of Appeals determination in *Edros,* 406 Mich 976 (1979). *Romulus* has been argued before the Supreme Court and an opinion on the merits is pending.

353; 282 NW2d 317 (1979), *Grove v Story Oldsmobile, Inc,* 31 Mich App 613, 617; 187 NW2d 923 (1971). Among the permissible reasons for denial of a motion to amend are undue delay, bad faith, or dilatory motive on the part of the movant. *Fyke, supra,* 659.

Although petitioner is attempting to protest the tax assessments for the years 1975, 1976, and 1977, petitioner did not file his original petition until June 7, 1978. This is well beyond the proper time for protesting assessments before the local board of review as established by administrative guidelines. Petitioner did not move to amend his original petition until November 9, 1979, more than one year since the original petition was filed. The hearing officer found that petitioner did not explain why he could not have protested, and did not in fact protest, his assessment to the board of review and *timely* file a petition with the Tax Tribunal. It was only after respondent moved to dismiss the petition and filed its brief in support of its motion that petitioner moved to amend. Interestingly, respondent's brief in support of its motion to dismiss the petition indicated that petitioner had not protested to the board of review or pled any of the possible exceptions to prior review in the board of review (including constructive fraud). The hearing officer found: "Apparently, petitioner believes that by inserting the words, 'fraud, misfeasance, and malfeasance' within his petition (by amendment) he has somehow nullified the statutory procedural requirements established by the Legislature for the appeal of a property assessment".

A panel of three Tax Tribunal judges unanimously agreed with the hearing officer's findings of fact and conclusions of law in denying petitioner's

motion to amend his petition and in granting respondent's motion to dismiss. We do not find this a clear abuse of discretion. Petitioner's delay in attempting to allege constructive fraud, in excess of four years from the first assessment protested and in excess of one year since the filing of his original petition, was undue.[4]

The order of the Michigan Tax Tribunal is hereby affirmed. No costs, a question of public interest being involved.

---

[4] We make no determination as to whether petitioner's motion to amend, coming after respondent's brief in support of the motion to dismiss, could be considered to be in bad faith.