*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESQUIRE DEVELOPMENT AND
CONSTRUCTION, INC.,

UNPUBLISHED
March 26, 2019

Petitioner-Appellant,

v

No. 343173
Tax Tribunal

CITY OF MASON,

LC No. 14-005644-TT;
15-004504-TT

Respondent-Appellee.

Before: METER, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Petitioner appeals as of right the Tax Tribunal's March 19, 2018 final opinion and order determining the taxable value of 24 properties located within the boundaries of respondent, City of Mason. Petitioner also challenges the tribunal's March 17, 2016 order stating that the tribunal did not have jurisdiction to hear any claims other than those for the years for which petitioner had appealed to the Board of Review. We affirm.

## I. Facts

Petitioner is a developer who purchased 43.8 acres of vacant land in 1999. Over the years, petitioner subdivided the land into two condominium developments and the condominium developments were further subdivided into condominium units and single family home sites. As new parcels were created for development, respondent assigned new parcel numbers to the parcels and determined the true cash values (TC), assessed values (AV) and taxable values (TV) of the parcels. In 2009 and 2012, petitioner filed tax appeals with respect to certain of its parcels, which ultimately resulted in the entry of consent judgments.

In 2014, petitioner filed a tax appeal covering 24 of its properties (which remain from the development and continue to be owned by petitioner), which was subsequently amended to add tax years 2015 through 2017. On July 27, 2015, petitioner filed a separate original petition alleging fraud, seeking to add the properties it had sold, disputing the TVs for every property from 2004 through 2015 or the date it sold, seeking "relief from judgment" from its prior consent judgments with respondent, seeking a refund from respondent attributable to reduced TVs,

-1-

requesting reduced TVs, and requesting consolidation with the 2014 case. The tribunal consolidated the two cases.

With respect to petitioner's claims in the 2015 petition, in an October 28, 2015 orde,r the tribunal dismissed all claims with respect to tax years 2009 through 2012 that had been previously appealed before the tribunal under the theory of res judicata, and denied petitioner's motion for relief from judgment in the previous tax appeals for failure to provide any legal support for its claims. The tribunal also denied petitioner's fraud claims, holding that petitioner had failed to invoke the tribunal's jurisdiction regarding any parcels it did not own when it filed the July 27, 2015 petition because it did not have a property interest in those parcels and, therefore, was not "a party in interest." The tribunal further stated that, while it did not have the authority to adjust the TVs for years that were not timely appealed, it did have the authority to "reduce an unconstitutional previous increase in taxable value for purposes of adjusting a taxable value that was timely challenged in a subsequent year." To the extent that petitioner was arguing that the assessments were "the result of an error of some type," the tribunal noted that jurisdiction over the previous years' assessments was governed by MCL 211.53a and 53b. It determined that, because petitioner had not gone to the board of review, MCL 211.53b was inapplicable, but permitted petitioner to present documentation and an explanation demonstrating the parcels petitioner believed were governed by MCL 211.53a.

Petitioner sought reconsideration, arguing that it was bringing an original action for a refund and redetermination of taxes levied under MCL 205.731(b) on the basis of fraud, that it had filed a motion for relief from judgment for claims related to the tax years for which the consent judgments had been entered, that the tribunal had incorrectly determined that petitioner was not a party in interest with respect to properties it sold because it "never divested itself of one hundred percent of its property interests in those parcels and the buildings constructed thereon," that the tribunal had the authority to consider fraud claims for periods of time beyond the three previous years because the allegation was fraud, not mutual mistake, and it was more appropriately heard by the tax tribunal than a circuit court under MCL 205.774.

In a March 17, 2016 order, the tribunal denied petitioner's motion for reconsideration, holding that petitioner was generally prevented from appealing the assessments for failure to protest them before the board of review, and that petitioner had not demonstrated that any of the three judicially recognized exceptions to the requirement that administrative remedies be exhausted applied. The tribunal then determined that petitioner's fraud claims were barred by the six-year period of limitations applicable to fraud under MCL 600.5813 and petitioner failed to plead or argue specific facts to demonstrate that respondent attempted to conceal any error. In addition, because petitioner had conceded that it did not intend to appeal any parcel in any tax year that it did not own the parcel, the tribunal determined that the only parcels remaining in the appeal were those in which petitioner had a direct property interest during the 2014 and 2015 tax years. The tribunal thus ordered petitioner to file an amended petition in the 2015 matter reflecting only the parcels for which it was a party in interest during the 2015 tax year, in order to clarify what parcels remained at issue in the case.

The tribunal placed the case in abeyance while petitioner sought leave to appeal the order denying its fraud claims, which this Court ultimately denied. *Esquire Dev & Constr Inc v City of Mason*, unpublished order of the Court of Appeals, entered August 17, 2016 (Docket No.

332370). In early November 2016, petitioner and respondent both filed valuation disclosures and prehearing statements. Respondent contended that the TVs for land were corrected in 2007, the properties were appealed in 2009 and 2012, and that due to market conditions, the TCVs were so significantly reduced that the taxable values were "cleansed" of any possible prior errors in calculating the TVs.

Petitioner, on the other hand, argued that to appropriately determine a property's TV, the TV of the land and the improvements thereon must be calculated and adjusted separately, and then added together, for a total TV. Petitioner further argued that, because TV is not to include the value of the availability of public-service improvements and non-physical improvements such as subdividing property or changing its zoning, respondent had used inappropriate methods to value the additions made to its properties beginning in 2004. Accordingly, it provided an alternative valuation theory, attempting to value the availability of public utilities, site plan approval, and the subdivision of property that needed to be removed from a property's TCV to arrive at a value for physical improvements that did not impermissibly include those amounts.

The Tribunal required additional factual development through a hearing/trial to determine the proper TVs for prior tax years in order to determine whether the TVs for the tax years at issue warranted correction. The tribunal determined that petitioner was collaterally estopped from attacking the TVs for 2009 through 2012, but that the tribunal was permitted to adjust a previous erroneous value to bring the current tax rolls into compliance. Because petitioner had not previously challenged the 2004 tax year, it was not actually and necessarily adjudicated, and the consent judgment did not deny the tribunal the ability to determine whether the 2004 tax year TV was proper and recalculate the TVs for the tax years currently under appeal.

Trial began in this matter on October 9, 2017. At trial, the parties stipulated to the TCV, AV, and "any derived numbers that relate[] to the assessed value." The only issue for trial was the TV of the 24 parcels for the 2014-2017 tax years. The tribunal stated that, for years 2009 through 2012, the TV was established by the tribunal in issuing its consent judgment. A two-day trial then proceeded wherein both parties presented evidence concerning the calculations of TV for the parcels at issue.

On April 3, 2018, the tribunal issued its final opinion and judgment. The tribunal determined that petitioner was collaterally estopped from challenging the TVs for 2009-2012, given that the parties had previously entered into a settlement concerning that issue. The tribunal found that had there not been a settlement of TCVs and AVs by the parties for 2009 through 2012, the tribunal would have revised the TVs for the subject properties based on the revised TVs for land, as calculated by both parties. It further held that the consent judgments had reduced the TVs for those years to a level such that recalculation of the TVs did not result in any change from the TVs on the assessment roll. Finally, it found that there was no merit to petitioner's contentions that respondent improperly included value for "public services" and intangibles such as rezoning in its TV calculations. The tribunal then affirmed the properties' TVs for 2014 through 2017. Petitioner now appeals that decision.

## II. Standard of Review

Review of Tax Tribunal decisions is limited. "In the absence of an allegation of fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal committed an error of law or adopted a wrong legal principle." *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490; 618 NW2d 917 (2000). "The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record." *Id.* at 490-491. Issues of statutory interpretation are reviewed de novo. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 528; 817 NW2d 548 (2012).

## III. Jurisdiction

On appeal, petitioner contends that the tribunal incorrectly determined in its March 17, 2016 order that it lacked jurisdiction to hear and determine its fraud claim. We disagree.

The Tax Tribunal Act (TTA), MCL 205.701 *et seq.*, sets forth the Tax Tribunal's jurisdiction. Thus, the tribunal's authority is limited to those powers authorized by statute and does not include powers of equity. *Electronic Data Sys Corp v Flint Twp*, 253 Mich App 538, 547-548; 656 NW2d 215 (2002). The goal when interpreting a statute is to ascertain and give effect to the intent of the Legislature. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). This Court examines the words in the statute and, if the language is unambiguous, judicial interpretation is not required or permitted; the statute must be enforced as written. *Id.*

Under MCL 205.735a(3), "for an assessment dispute as to the valuation or exemption of property, the assessment must be protested before the board of review before the tribunal acquires jurisdiction of the dispute under subsection (6)."[1] MCL 205.735a(6) requires that in an assessment dispute involving residential real property, a petitioner invokes the tribunal's jurisdiction by "filing a written petition on or before July 31 of the tax year involved." These provisions apply to all proceedings before the tribunal commenced after December 31, 2006. MCL 205.735a(1). "[T]he Tax Tribunal does not have the authority to grant a request for a delayed appeal." *Electronic Data Sys Corp*, 253 Mich App at 548. An untimely petition means the jurisdiction of the Tax Tribunal is never invoked, and defects in subject-matter jurisdiction cannot be waived. *Id.* Thus, to the extent petitioner sought to invoke the Tax Tribunal's jurisdiction under MCL 205.735a, the tribunal correctly determined that it lacked jurisdiction because petitioner failed to file its petition before July 31 of the tax years involved.

Petitioner contends that the tribunal nevertheless had jurisdiction under MCL 205.731(b). MCL 205.731(b) provides that the tribunal has exclusive and original jurisdiction for "[a] proceeding for a refund or redetermination of a tax levied under the property tax laws of this

---

[1] Because the properties at issue are residential property, MCL 211.34c(e)(1), the exceptions in MCL 205.735a that provide direct appeal to the tribunal are inapplicable.

state." Indeed, the tribunal was the only authority with jurisdiction to hear a refund claim, pursuant to MCL 205.774, which provides:

> The right to sue any agency for refund of any taxes other than by proceedings before the tribunal is abolished as of September 30, 1974. If a tax paid to an agency is erroneous or unlawful, it shall not be requisite that the payment be made under protest in order to invoke a right to refund by proceedings before the tribunal.

Thus, generally speaking, the tribunal had jurisdiction to hear petitioner's claim for a refund. However, in order to invoke the tribunal's jurisdiction under MCL 205.731(b), the grounds for the refund need to be permissible. See *Ford Motor Co v Bruce Twp*, 264 Mich App 1, 5; 689 NW2d 764 (2004) (Holding that the tribunal had "subject-matter jurisdiction over the petition, which sought a refund of excess taxes paid, pursuant to MCL 205.731(b), as a result of a mutual mistake of fact, as required by MCL 211.53a"), aff'd in part and rev'd in part, *Ford Motor Co v City of Woodhaven*, 475 Mich 425; 716 NW2d 247 (2006). Plaintiff argues that fraud was the permissible basis for his refund. Accordingly, the first question is whether the tribunal had the jurisdiction to hear petitioner's fraud claims.

At oral argument on the motion for reconsideration, petitioner conceded that nothing in the TTA referenced fraud as a cause of action.[2] Petitioner contends that the tribunal has original jurisdiction over proceedings for a refund or redetermination of taxes, without appeal to a local board of review, if 1) the assessed party had no notice of the assessment, 2) where the administrative appeal requirement would be an exercise in futility, or 3) where local officials have committed constructive fraud. *Turner v Lansing Tp*, 108 Mich App 103, 106-107; 310 NW2d 287 (1981). Petitioner alleges for the first time on appeal that he meets all three standards, including lack of notice and futility. While this Court will generally not review a case on a theory different from that on which it was tried, *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 110; 593 NW2d 595 (1999), because the tribunal considered all three exceptions in its March 17, 2016 order, we will briefly address the merits of petitioner's claim that it met the exceptions stated in *Turner*, 108 Mich App at 106-107.

The first exception is when a party does not receive notice. Petitioner admits that it received assessment notices for all of the tax years at issue, but argues that they did not give it notice of respondent's alleged fraud and, therefore, receipt of the notices did not constitute notice in this case. The exception for notice, however, is simply whether a party has received notice of the assessment, which petitioner indisputably did. See, *Turner*, 108 Mich App at 107-108. And,

---

[2] Petitioner did argue, in the alternative, that if respondent's actions were not fraud, the determination of the TVs of its properties was incorrect as a result of mutual mistake, entitling it to the correction of the values under MCL 211.53a. However, petitioner has made no argument on appeal about MCL 205.731a or mutual mistake. Accordingly, the argument is deemed waived. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

the law does not require notice other than the information contained in the notice of assessment (MCL 211.24c). Accordingly, this exception did not apply.

The second exception is futility in exhaustion of remedies. Petitioner argues that because it met with respondent's assessor informally to resolve the issues and appealed to the board of review in 2014, 2015, 2016, and 2017 (which were all rejected), and because respondent admitted at trial that it knew there was a miscalculation of improvements, petitioner had shown futility in exhaustion of remedies. To the contrary, the fact that petitioner was able to appeal the assessments in 2009, 2010, 2011, 2012, 2014, 2015, 2016, and 2017, showed that petitioner was capable of appealing the previous years' assessments to the board of review before taking an appeal to the tribunal, and the consent judgments between the parties for tax years 2009 through 2012 showed that respondent was willing to reconsider its assessments. That the board of review rejected petitioner's appeals in 2014 through 2017 is irrelevant to the question of whether petitioner could have appealed the assessments from 2004 through 2008. On the record, petitioner has failed to show that appeal to the board of review for the previous years' assessments would have been futile. Accordingly, the tribunal did not err in determining that this exception did not apply.

The third exception is if the officials have committed constructive fraud. Previously, Michigan law permitted claims for fraud to be brought before the Tax Tribunal. See, e.g., *Helin v Grosse Pointe Tp*, 329 Mich 396, 406-407; 45 NW2d 338 (1951). However, "constructive fraud is an equitable doctrine, calling for the use of a court's equitable powers . . . ." *Turner*, 108 Mich App at 111. In *Turner*, this Court determined that the Tax Tribunal was vested with equitable powers and, therefore, determined that "the doctrine of constructive fraud could be employed if timely raised or not otherwise inapplicable." *Id.* at 112. Since *Turner*, however, this Court has held that the Tax Tribunal does *not* have powers of equity. *Electronic Data Sys Corp*, 253 Mich App at 548. Because *Turner* was decided before November 1, 1990, and *Electronic Data Sys Corp* was decided in 2002, this Court is required to adopt the position that the tribunal does not have powers of equity and, therefore, does not have jurisdiction to hear a claim of constructive fraud. MCR 7.215(J)(1).

Furthermore, even if the Tax Tribunal could hear petitioner's fraud claim, petitioner failed to file it within the requisite time period. The parties discuss the applicability of the six-year statute of limitations in MCL 600.5813. However, this is not the applicable statute. MCL 205.735a(6) provides, "*In all other matters*, the jurisdiction of the tribunal is invoked by a party in interest, as petitioner, filing a written petition within 35 days after the final decision, ruling, or determination" (emphasis added). Both our Supreme Court and the Court of Appeals have clearly stated that the time requirements contained in MCL 205.735[a(6)[3]] are jurisdictional. *Electronic Data Sys Corp*, 253 Mich App at 543. Thus, the statute required petitioner to file its fraud claim within 35 days of the disputed decision, ruling, or determination, or issuance of the

---

[3] The case actually cites MCL 205.735(2). That statute was revised by 2006 PA 174 and the provisions were moved to MCL 205.735(3) for cases predating January 1, 2007, and to MCL 205.735a(6) for cases beginning January 1, 2007.

tax bill. See *Briggs Tax Svc, LLC v Detroit Pub Sch*, 485 Mich 69, 73, 85; 780 NW2d (2010) (lack of jurisdiction for failure to file "within 30 days of the issuance of the applicable tax bills"). There is an exception to this rule. "[W]hen another statute provides a different limitations period for filing a petition with the Tax Tribunal, that statute controls and MCL 205.735[a] does not apply." *Id.* at 76. Here, however, there is no statute, other than MCL 205.735a(6), that provides for a limitation period governing refund requests. MCL 600.5813, the statute considered by the parties and the tribunal, is a "catch-all" provision applicable to all types of personal actions not specifically covered elsewhere; it is not a statute providing "a different limitations period for filing a petition with the Tax Tribunal." *Briggs Tax Svc, LLC*, 485 Mich at 76. Because the Tax Tribunal Act already includes its own "catch-all" provision in MCL 205.735a(6) ("all other matters"), the Legislature has already provided a statute of limitations for these claims, and MCL 600.5813 will not be permitted to essentially overwrite it.

This interpretation is supported by our Supreme Court's holding in *Briggs Tax Svc, LLC*, 485 Mich 69. In *Briggs Tax Svc, LLC v Detroit Pub Sch*, 282 Mich App 29; 761 NW2d 816 (2008), rev'd 485 Mich 69 (2010), "Briggs alleged that the 'assessment and collection of the Illegal Levy constituted fraud or constructive fraud on Petitioner' and tolled any period of limitations." *Briggs Tax Svc, LLC*, 282 Mich App at 32. Briggs sought tax refunds on several grounds, including mutual mistake of fact under MCL 211.53a, and alleged misrepresentations and violations of the Michigan Constitution. *Id.* The tribunal dismissed Briggs's petition based on lack of jurisdiction. *Id.* at 33. On appeal, Briggs argued that it was entitled to a refund pursuant to MCL 211.53a. *Id.* This Court acknowledged the 30-day[4] time period in former MCL 205.735(2), but concluded that MCL 211.53a was applicable because of a mutual mistake of fact, providing Briggs three years in which to file its petition, not 30 days. *Id.* at 34-35, 39. The Supreme Court reversed and reinstated the tribunal's determination that Briggs's claim was subject to the 30-day limitations period of former MCL 205.735(2) and that the three-year limitations period of MCL 211.53a does not apply. *Briggs Tax Svc, LLC*, 485 Mich at 85. The Supreme Court did so because it reviewed the facts and determined that there was no mutual mistake and the mistake that occurred was not one of fact. *Id.* at 78-85.

In the instant case, it makes no difference whether petitioner sought his claim under the fraud theory or under its now waived mutual mistake of fact theory because petitioner missed both filing deadlines. There is no dispute that petitioner did not file his claim for a refund until July of 2015. The 35-day deadline would have passed for all of the previous years for which petitioner sought a refund, except perhaps 2015, depending on when the tax bills were issued. *Briggs Tax Serv, LLC*, 485 Mich at 73. But the 2015 and 2014 assessments were already properly before the tribunal in MTT Docket No. 14-005644-TT from petitioner's initial petition for 2014 and its motion to amend to add 2015. As for the three-year mutual mistake deadline, the alleged errors occurred in 2004 and 2007. The 2015 filing date is years too late.

To the extent that petitioner was arguing a continuing error up through 2015 with respect to the 2004 and 2007 alleged errors, a mid-2015 filing date would entitle petitioner to review of

---

[4] Now 35 days pursuant to the changes in 2006 PA 174.

2014, 2013, and perhaps 2012, again depending on when the tax bills were issued. However, the 2014 assessment was already before the tribunal, and the 2012 assessment was adjusted pursuant to a prior consent judgment. Therefore, even assuming that the tribunal erred and should have permitted a mutual mistake of fact claim, the only additional year for which petitioner could have sought a refund was 2013. Even assuming this error occurred, there is no relief that this Court could grant petitioner. The tribunal already determined that the consent judgment covering tax years 2009 through 2012 "washed out" the alleged errors, resulting in TVs that were even lower than they would have been if the errors had simply been corrected, which was supported by the record. Accordingly, the 2013 TV was based on the now error-free 2012 valuation, precluding petitioner from any claim of error or entitlement to a refund for 2013 taxes.

Petitioner additionally asserts that his fraud claim was tolled by MCL 600.5855, which provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

However, in *Briggs Tax Svc, LLC*, 485 Mich 69, even though Briggs had alleged constructive fraud, our Supreme Court made no mention of the possibility of tolling under MCL 600.5855, even though that argument was brought before the tribunal. Moreover, even if MCL 600.5855 were applicable generally, petitioner has failed to show that it was applicable in this case.

Petitioner is correct that our Supreme Court has described this as "essentially unlimited tolling based on discovery when a claim is fraudulently concealed." *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 391; 738 NW2d 664 (2007). Generally, "for fraudulent concealment to postpone the running of the period of limitation, the fraud must be manifested by an affirmative act or misrepresentation." *Lumber Village, Inc v Siegler*, 135 Mich App 685, 694; 355 NW2d 658 (1984). One exception to this rule "is that there is an affirmative duty to disclose where the parties are in a fiduciary relationship." *Id.* Our Supreme Court has held that " '[a]ll public officers are agents, and their official powers are fiduciary.' " *Macomb Co Prosecuting Attorney v Murphy*, 464 Mich 149, 164; 627 NW2d 247 (2001), quoting *People ex rel Plugger v Twp Bd of Overyssel*, 11 Mich 222, 225 (1863).

Nevertheless, as the tribunal concluded, petitioner failed to plead any facts to demonstrate that respondent attempted to conceal any error. The testimony indicated that it was difficult to tell which parcels were assessed the various partial building costs from year to year when buildings were continuously being constructed and parcels split, increasing the possibility of a mistake. There was no evidence that respondent intentionally misassessed any of the properties or that respondent attempted to conceal any allegedly erroneous assessment. Respondent provided petitioner with assessments every year so that any errors were equally visible to petitioner and respondent. There is simply no evidence of any actions that could constitute concealment. Accordingly, the tribunal did not err in holding that petitioner failed to plead any

facts to demonstrate that respondent attempted to conceal any error, and the tribunal properly dismissed petitioner's fraud claim for lack of jurisdiction.

IV. Separate Land and Addition Valuation

Petitioner next argues that the tribunal erred in rejecting its position that the TV of land and improvements must be calculated and adjusted separately before being added together to create the TV for the parcel of property and instead adopting respondent's method of valuation. We disagree.

At trial, Scott Cunningham, the former and current assessor, testified that for the parcel at issue, "the land value is a part of the assessed value, not a part of the taxable value" and, "[i]t's not the land portion of the assessed [value] that limits the taxable value. It's the total assessed value of the property that limits the taxable value." As a certified assessor, Cunningham had never maintained a separate line item in TV for land only, he was not aware of any assessor that did, and he was unaware of any instance when the TV of each component of a parcel would be calculated separately. Cunningham was aware of only one method for calculating TV— the cap formula—where you take the TV from one year and, if there are no additions, multiply it by the inflation rate; the cap formula "does not distinguish between land value and building value. It's just one value."

The tribunal considered the above, as well as the testimony of petitioner's experts, and found that petitioner's experts failed to provide any legal support for petitioner's claimed valuation method. The tribunal further found that there was nothing in MCL 211.27a (addressing taxable value) or caselaw interpreting the statute that supported petitioner's contention that separate TVs must be calculated for land, buildings, and land improvements. On appeal, petitioner has still not shown that there is any caselaw or statute that agrees with its position. Rather, petitioner concedes that it is seeking a clarification or expansion of the law. The tribunal can hardly be deemed to have committed an error of law or adopted a wrong principle where there is no authority requiring or even proposing what petitioner requests. See *Mich Milk Producers*, 242 Mich App at 490.

Further, while if the valuation method employed violates the Constitution or a statutory obligation the method should be changed, petitioner has not shown that respondent's method of assessment in this matter was improper. Just because petitioner has come up with an interpretation that would result in significantly different valuations of its property than those calculated by respondent does not mean that respondent's method violates the Constitution. Aggregate TV calculations are not, in and of themselves, violative of the Constitution. And, had the Legislature intended all improvements and the land to be valued and adjusted separately, as petitioner contends, it would have stated that the value of each parcel of property was the sum or total of *each* property's taxable value in the immediately preceding year minus losses, adjusted, and plus additions. Instead, MCL 211.27a(2) provides that the value of each parcel of property comes from *the* property's SEV or *the* property's previous year's TV. Recognizing that "the" is a definite article and "property" is a singular noun, it is clear that the phrase "the property" refers to a single unit of property. The unit of property to which MCL 211.27a(2) refers is ascertained by looking at the beginning of MCL 211.27a(2), which provides that subsections (a) and (b) are

determining the "value of each parcel of property." Therefore *the* property to which MCL 211.27a(2)(a) and (b) refer is "each parcel of property."

In sum, MCL 211.27a(1) references "property" because it must encompass both real and tangible personal property as set forth in Const 1963, art 9, § 3. MCL 211.27a(2) speaks of "each parcel of property" because it only deals with real property. Once the term "property" from MCL 211.27a(1) is filtered through Const 1963, art 9, § 3 and other provisions of the General Property Tax Act, it is clear that when real property is assessed at 50% of its TCV, it is the entire parcel of property being assessed, not its component parts. Under MCL 211.27a(1) and (2), the assessed value of a parcel of real property is fixed at 50% of its TCV, and each parcel's TV for the subsequent year is either the parcel's SEV, or the parcel's previous year's TV, minus losses, adjusted by the applicable capped rate, plus additions. Accordingly, respondent's assessors have not violated either the Constitution or their statutory obligations by calculating a parcel's TV by multiplying the entire parcel's TV by the appropriate increase percentage.

V. TV of New Construction

Petitioner lastly contends that the tribunal erroneously concluded that the costs of non-includable improvements were not included in the valuations. Petitioner does not take issue with any of the tribunal's findings of fact, per se. Indeed, it concedes the initial land value figures and the fact that there are no impermissible inclusions in those values. Instead, petitioner argues that the tribunal erred as a matter of law in accepting respondent's TVs for its properties because the new construction contained in the "additions" included in the subject properties' TVs were improperly valued. We find that the tribunal properly determined that the value added by platting, zoning changes, splitting, and addition of public-service improvements were not included in the initial TV, and that subsequent TVs were simply calculated by a mathematical formula that does not require the division of land and improvements into separate values.

As an initial matter, the valuation of the "additions" included on the properties occurred in the prior consent judgments. Cunningham testified that for 2013 through 2017, the parcels' TVs were determined by multiplying the previous year's TV by the CPI using the constitutional and statutory formula. Petitioner also conceded that the TVs for 2013 were simply the TVs from 2012 adjusted by the inflation rate, and that each subsequent year was calculated applying the statutory formula to the previous year's TV. Accordingly, using the land values created by the 2012 consent judgment, and applying the statutory formula using the appropriate CPI—which petitioner has conceded respondent did—there is no error in the calculation of the TVs for 2014 through 2017. Because there have been no "additions" to petitioner's properties since 2007 or 2008, the application of the purely mathematical calculations done to the properties utilizing the 2012 consent judgment numbers eliminates the need for this Court to consider petitioner's argument that the *initial* inclusion of the additions value was improper. Rather, it need only address petitioner's assertion that the land and improvement components must *continue*[5] to be

---

[5] All parties and the tribunal agree that land and additions are separately valued for the first year after a transfer occurs.

separately valued to prevent any realization of the impermissible value additions in TV before property is transferred.

At trial, petitioner asked how, when property values were falling, assessors made sure "that non-addition improvements aren't recognized in the unique situation that" petitioner faced if assessors do not keep separate track of the land value from the improvement value. Cunningham answered that TV and AV were "calculated completely separately from each other." Petitioner's valuation method assumes that a relationship exists and must be maintained between a property's TV and AV, such that the proportions of land value and improvement value remain the same. However, as the trial court noted, that relationship just does not exist. Nothing in the Constitution or the statutes requires that the land and its improvements must have the same percentage value of AV as they do of TV. Rather, so long as the aggregate TV only increases by the inflation rate, and that increased aggregate TV is less than the aggregate AV, the constitutional and statutory requirements are met. There was no evidence that respondent improperly made the calculation required by the statutes and the Constitution, and the evidence showed that any previous error was gone because even using a land value of $0, the TVs would have been higher than they were when calculating the TV from the settled 2012 numbers.

There is no dispute that the initial calculated values for the properties at issue did not include any value for zoning, splitting, platting, or public-service additions. There is also no dispute that respondent calculated the TV for the properties using the consent judgment amounts and applying the statutory formula. Moreover, no additions had been made to the properties since 2007. Experts for both petitioner and respondent, as well as the tribunal, stated that TV and AV could not be mixed and that they bore no relationship to each other outside of the first tax year after a property was transferred. Given petitioner's concession that nothing in the Constitution or *Toll Northville LTD v Twp of Northville*, 480 Mich 6, 16; 743 NW2d 902 (2008) (holding that public-service improvements located on public easements or land that ultimately becomes public do not constitute additions) requires consideration of a parcel's land and improvement components separately when calculating a property's TV, on this record, the tribunal's factual findings are supported by competent, material, and substantial evidence and there is no evidence that the trial court committed an error of law in determining that the TVs of petitioner's properties were properly calculated utilizing the statutory math formula.

Affirmed.

/s/ Patrick M. Meter
/s/ Deborah A. Servitto
/s/ James Robert Redford

-11-